IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

FILED-CLERK
U.S. DISTRICT COURT
04 AUG 18 PM 3:32
TEXAS-EASTERN
BY_____

| | |
|---|---|
| BEVERLY A. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 6:04cv395 |
| ) | |
| THE GOODYEAR TIRE & RUBBER CO., ) | |
| P.O. Box 4670 ) | |
| Tyler, Texas 75702 ) | JURY TRIAL DEMAND |
| ) | |
| and ) | |
| ) | |
| UNICCO SERVICE COMPANY, ) | |
| P.O. Box 5176 ) | |
| Tyler, Texas 75712, ) | |
| ) | |
| Defendants ) | |

### PRO SE COMPLAINT

Plaintiff Beverly A. Moore alleges for her Complaint as follows:

**I.   INTRODUCTION**

1. Beverly A. Moore ("Plaintiff") brings this action against The Goodyear Tire & Rubber Company ("Goodyear") and Unicco Service Company ("Unicco") (collectively "Defendants") for legal relief to redress discrimination on the basis of race. The suit is brought to secure the protection of, and to redress the deprivation of rights secured by, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and Section One of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4); 28 U.S.C. §§2201, 2202; 42 U.S.C. §1981 and Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(a). The unlawful employment practices alleged herein below were committed by Defendant within Smith County, Texas.

## III. PARTIES

4. **Plaintiff Beverly A. Moore** is an African-American female citizen of the United States who resides in Tyler, Texas.

5. **Defendant Goodyear Tire & Rubber Company** is a corporation that has substantial operations in Tyler, Texas. Goodyear employs more than 500 persons in its Tyler, Texas plant. It has nationwide operations through which Goodyear employs thousands of workers.

6. **Defendant Unicco Service Company** is a corporation that has substantial operations in Tyler, Texas and employs numerous individuals at the Goodyear plant in Tyler, Texas, and more than 500 persons in total.

## IV. ADMINISTRATIVE EXHAUSTION

7. Plaintiff has fulfilled all of the conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

8. On January 28, 2004, Plaintiff filed two Charges of Discrimination (Charge Nos. 310-2004-00358 and 310-2004-01546) with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination by Goodyear and Unicco on the basis of race.

9. On May 20, 2004, the EEOC issued to Plaintiff two Notices of Right to Sue against Goodyear and Unicco. The Plaintiff is filing this complaint within 90 days of her receipt of the Notices of Right To Sue.

10. Plaintiff's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion.

## V. STATEMENT OF FACTS

11. Plaintiff was denied a promotion because of her race; has been subjected to disparate terms and conditions of employment; and has been discriminatorily discharged by Goodyear.

12. Plaintiff was discriminatorily discharged by Unicco.

13. Plaintiff commenced employment at Goodyear's Tyler facility in 1973 as a Clerk Typist in the Purchasing Department. Plaintiff also served as a Secretary in the Quality Technician Department ("Q-Tech") and then as Specifications Processor/Q-Tech Coordinator. When Plaintiff was discharged in 2003, she was a Materials Handler, a position she had held since approximately 2001. Each of the positions Plaintiff held at the Tyler facility was salaried.

14. In approximately 2001, Plaintiff sought a promotion to Training Coordinator, a position for which she possessed the requisite qualifications and experience. Despite Plaintiff's qualifications and experience, however, Goodyear awarded the position to an equally or less qualified white employee named Sherry Hill.

15. After being denied the Training Coordinator positions, Plaintiff complained about the discriminatory practice to Goodyear Human Resources ("HR") Manager, Dick Ward ("Ward"). Ward did not respond to Plaintiff's complaint, and the discriminatory promotion was never addressed by Goodyear.

16. Plaintiff was also subjected to unequal terms and conditions of employment by Goodyear. For example, Plaintiff's white supervisor, Avery Goodlett ("Goodlett"), subjected Plaintiff to a discriminatory performance evaluation in 2003. White employees are not unfairly treated with respect to performance evaluations.

17. Further, when Plaintiff complained about unsafe working conditions due to the presence of rats in her office in about 2003, Goodlett accused Plaintiff of being "full of bullcrap" and refused to address her concerns. White employees are not subjected to such treatment.

18. Additionally, Plaintiff was unfairly discharged from her position as a Materials Handler. On February 24, 2003, Kim Juillerate ("Juillerate"), who is the Controller over Plaintiff's department, and Goodlett informed Plaintiff that she would be laid off from Goodyear.

19. During the February 24, 2003 meeting, Juillerate and Goodlett told Plaintiff that she could continue to work in her position through Unicco, an outsourcing company retained by Goodyear to hire employees at the Tyler, Texas facility.

20. On February 25, 2003, Plaintiff met with Unicco HR representative Sherry Harrison ("Harrison"), who had already received Plaintiff's paperwork from Goodyear and who confirmed that Plaintiff could continue to work in her Materials Handler position as an employee of Unicco, rather than Goodyear.

21. On March 21, 2003, Plaintiff met with Carrie King ("King"), who works in Goodyear's HR department. At the meeting, King told Plaintiff that she could choose to be laid off from Goodyear or to retire from the company. King reiterated that Plaintiff would continue working in her position for Unicco regardless of her choice.

22. King advised Plaintiff that, due to Plaintiff's lengthy tenure with the company, it

would be more advantageous financially for Plaintiff if she chose to categorize her departure from the company as retirement rather than as a lay off.

23. Plaintiff reluctantly followed King's advice and, on March 31, 2003, she officially retired from Goodyear. On April 1, 2003, Plaintiff continued working in her Materials Handler position, but became employed by Unicco rather than Goodyear.

24. On May 19, 2003, Plaintiff was summoned to King's office for a meeting. At that time, King told Plaintiff that she had misinformed Plaintiff in advising her to take retirement rather than a lay off. King told Plaintiff that, according to federal law, an employee who retired could not continue to work in the same position, regardless of the employer. King also told Plaintiff that the law required Plaintiff to be off work for six months to work in a different position or for one year to return to work in the same position and that, because Plaintiff had retired, she would have to stop working as a Materials Handler at the plant, effective June 27, 2003.

25. Goodyear did not require white employees, including Jack Horschler and Joe Gagliano, to adhere to these guidelines. Both Horschler and Gagliano took retirement and continued working at the Tyler facility.

26. Between May 19, 2003 and June 27, 2003, Plaintiff repeatedly attempted to appeal Goodyear's decision to lay her off from the company. Specifically, she spoke with Ernie Ward, Kathy Geier, and Don Harper, who are all Goodyear officials based at the company's headquarters in Akron, Ohio, as well as King.

27. On June 27, 2003, Goodyear advised Plaintiff that she could work forty hours per month until the six months from her official retire date of April 1, 2003, had elapsed on October 1, 2003.

28. Unicco Site Manager Harrison told Plaintiff that, when she returned full-time to the plant on October 1, she could work as a Receiving Clerk at her current rate of pay.

29. Plaintiff worked forty hours per month at the Tyler facility from June 27, 2003, until September 2003. Two weeks before Plaintiff was scheduled to return to work full-time, she received a letter from Unicco Site Manager Harrison informing her that the Receiving Clerk position was being eliminated, effective September 30, 2003, and that she would no longer be working at the Tyler plant.

30. Unicco did not eliminate Plaintiff's position, but instead filled the position with a less qualified white employee named Stephanie Mallette.

## VI. **CAUSES OF ACTION**

### **COUNT ONE**

**(Discrimination on the Basis of Race in Violation of Title VII
of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) et seq.,)**

31. Plaintiff Beverly A. Moore repeats the allegations contained in paragraphs 1-30, above, as though fully stated in this paragraph.

32. Defendant Goodyear denied Plaintiff an opportunity to be promoted because of her race, African-American, which was afforded to white candidates.

33. Defendant Goodyear discriminated against Plaintiff on the basis of her race, African-American, in the terms, conditions, and privileges of her employment.

34. Defendants Goodyear and Unicco discriminatorily discharged Plaintiff because of her race, African-American, while retaining similarly situated white employees.

35. This reckless and willful discrimination on the part of Defendants constitutes a violation of Plaintiff's statutory rights under Title VII.

36. Defendants' discriminatory employment practices have caused Plaintiff to experience severe harm, including loss of compensation, wages, back pay and front pay, benefits, seniority, and other employment benefits.

37. Plaintiff has further suffered severe emotional distress, humiliation, indignity and the resulting injury and loss.

38. By reason of the Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available under Title VII, including, but not limited to, compensatory, nominal, and punitive damages, and reinstatement with restoration of seniority and benefits.

## COUNT TWO

### (Discrimination and Retaliation in Violation of Section One of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981)

39. Plaintiff Beverly A. Moore repeats the allegations contained in paragraphs 1- 30, above, as though fully stated in this paragraph.

40. Defendant Goodyear denied Plaintiff opportunities to be promoted on the basis of her race, African-American, which were afforded to white candidates.

41. Defendant Goodyear intentionally and maliciously discriminated against Plaintiff on the basis of her race, African-American, in the terms, conditions, and privileges of her employment.

42. Defendants discriminatorily discharged Plaintiff because of her race, African-American, while retaining several white employees.

43. This reckless and willful discrimination on the part of Defendants constitutes a violation of the Plaintiff's statutory rights under 42 U.S.C. § 1981.

44. Defendants' discriminatory employment practices has caused Plaintiff to experience

severe harm, including loss of compensation, wages, back pay and front pay, benefits, seniority, and other employment benefits.

45. Plaintiff has further suffered severe emotional distress, humiliation, indignity and the resulting injury and loss.

46. By reason of the Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available under §1981, including, but not limited to, compensatory, nominal, and punitive damages, and reinstatement with restoration of seniority and benefits.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff Beverly A. Moore respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Grant Plaintiff a declaratory judgment holding that the actions of the Defendants described herein violated the rights of the Plaintiff as secured by Title VII and 42 U.S.C. § 1981 as amended;

B. Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and on the Defendants' behalf from continuing to violate Title VII and §1981;

C. Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her back pay (plus interest), front pay, benefits, reinstatement with restoration of seniority, plus compensatory, nominal, and punitive damages in an amount of one million dollars ($1,000,000.00), and all costs and attorneys' fees associated with this action; and

D. Grant such other relief as may be deemed appropriate by the Court.

## VIII. JURY TRIAL DEMAND

Plaintiff Beverly A. Moore requests a trial by jury as to all issues triable as of right to a jury.

Respectfully submitted this ___ day of August, 2004.

*Beverly A. Moore*
BEVERLY A. MOORE
503 Bandera Street
Tyler, Texas 75702
(903) 593-5915

**PRO SE**